## W. B. TURNER ET AL. v. MARY A. COCHRAN ET AL.

### Decided December 3, 1902.

**1.—Deed—Description—Identity of Land.**

Where there was a deed, executed in 1856, describing the land as "1476 acres, situated in the State of Texas, granted to S. J. R., lying between the two branches of the San Jacinto River in M. County," and the same grantor by deed executed a few months later conveyed the land to the same grantee, describing it as being "1476 acres, granted to S. J. R. between the two San Jacinto rivers," and on the latter date also executed a declaration of trust, in which the land was described as "1476 acres, S. J. Rickhow," the description in the three instruments, taken together, are held to clearly refer to the same land and to sufficiently identify it.

**2.—Same—Mortgage—Lapse of Time—Presumption of Payment.**

Evidence held to warrant the trial court in assuming that the later deed, dated November 10, 1856, was a mortgage, as to which, from the great lapse of time, a presumption would obtain that the debt was discharged; and as to the prior deed, that it was either a mortgage, or that it would be presumed the land had been reconveyed to the grantor.

**3.—Same—Defeasance Construed.**

Where a written defeasance or declaration of trust accompanying a deed recited that T. "has this day conveyed to me his one-half interest in the following property," with a list of lands, lots, and personalty thereto subjoined, and then proceeded, "also the following lands," after which is listed several other surveys, the use of the word "also" placed the latter lands in a different category from the preceding ones, and showed that as to such latter lands the entire interest, and not merely a half interest, was conveyed.

**4.—Evidence—Private Memorandum.**

Where plaintiff sued in trespass to try title on the theory that certain debts secured by an ancient deed, accompanied by a written defeasance, had been satisfied, a private memorandum of the grantee found among his papers, showing that he had disposed of the property pledged and that the proceeds were insufficient to satisfy the debts secured, offered in evidence by the defendant, was properly held not admissible.

**5.—Same—Notice—Trespass to Try Title.**

Evidence in trespass to try title held sufficient to show that a purchaser from defendant, after the institution of the suit, bought with actual notice of plaintiff's claim.

Appeal from the District Court of Harris County. Tried below before Hon. Chas. E. Ashe.

*H. & A. R. Masterson,* for appellants.

*W. P. & A. R. Hamblen* and *L. B. Moody,* for appellees.

GILL, Associate Justice.—The appellees, Mary A. Cochran, joined pro forma by her husband, originally brought two suits against W. B. Turner for the recovery of 1476 acres of land alleged to be situated in Montgomery County, Texas, and described as one-third of a league originally granted to Jas. W. Henderson, assignee of S. J. Rickhow. These suits were filed one in Montgomery County and one in Harris County. The form of the actions was trespass to try title. By agreement of counsel the Montgomery County suit was transferred to Harris County and there consolidated with the Harris County suit. The latter was filed February 28, 1900, and the former March 3, 1900. John Hammon intervened in the suit, claiming title, and H. Masterson was also made a party. He answered setting up some claim to the land, but offered no proof upon the trial. Appellees prevailed upon the first trial, and upon appeal the judgment was affirmed by this court. 63 S. W. Rep., 151.

Pending motion for rehearing the controlling question was certified and upon the answers of the Supreme Court (61 Southwestern Reporter, 923) the judgment was reversed and the cause remanded. On a second trial the appellees again prevailed, and this is a second appeal.

The pleadings present the issues herein discussed and need not be set out either in substance or at length. The facts established on the last trial are so entirely different from the first that a full restatement of the substance of the evidence is necessary. The history of the title to the land involved in this suit is as follows:

On the 29th day of September, 1851, the 1476 acres of land in controversy was patented to James W. Henderson, assignee of Samuel J. Rickhow, and was described in the patent as situated in Montgomery County, Texas. On March 23, 1853, J. W. Henderson sold and conveyed the land to James A. Thompson. On the 12th day of August, 1856, Thompson made and delivered a deed absolute in form with covenants of warranty naming Wm. R. Baker as the vendee. This deed was properly recorded in Montgomery County April 6, 1858.

On the 10th day of November, 1856, just three months later than the date of the deed last above mentioned, J. A. Thompson executed to W. R. Baker two other deeds which embraced several tracts of land, some negroes and a steamboat. In one of the deeds describing the land conveyed appears this sentence: "1476 acres granted to S. J. Rickhow between the two San Jacinto rivers." The tract is not referred to in any other way in that instrument. On the same day, November 10, 1856, W. R. Baker executed and delivered to J. A. Thompson an instrument of writing as follows:

"J. A. Thompson has this day conveyed to me his half interest in the following property:
"177 acres, Humphrey Jackson.
"1476 acres, John Iams.

"1565 acres, J. W. Singleton.

"492 acres, H. McLean.

"836½ acres, H. Jackson.

"300 acres, John Jones.

"Lots 3, 4, 5, 6, 11 and 12 in block No. 68, Houston; negroes Sandy, Milas, Dan and June; steamboat 'Sam.' Also the following lands:

"766 acres, J. W. Asbury tract.

"750 acres, W. McWilkerson.

"240 acres, W. McWilkerson.

"500 acres, J. J. Dunman.

"960 acres, E. L. Branhan.

"1476 acres, S. J. Rickhow.

"The title and interest of the said J. A. Thompson is to be conveyed back by me on demand to him or his heirs. The object of the conveyance being to secure me in the payment of the debts and liabilities of Baker and Thompson, and for all payments and advances made by me according to their books, and that I shall be paid back to the exclusion of the private debts of said Thompson. Upon the completion of said payments the title to be conveyed to the said Thompson or his heirs. November 10th, 1856.

(Signed "W. R. BAKER."

The other paper referred to in the instrument last named does not affect in any way the land in controversy. The two deeds of November 10, 1856, to which this instrument refers, were duly acknowledged and recorded in Harris County, December 8, 1856, but were not recorded in Montgomery County. The instrument executed by W. R. Baker and referring to these two deeds was recorded in Harris County, February 2, 1859, but not in Montgomery County until August 27, 1900, and after these suits were filed.

W. B. Turner claims as heir of W. R. Baker, who died prior to 1894, basing his claims upon the deeds from Thompson to his ancestor and the fact that he was sole heir and devisee. Hammon bought of Turner after the institution of the suits, but whether with notice lis pendens will be hereafter seen.

Masterson bought from Hammon pendente lite.

On November 14, 1856, J. A. Thompson executed a deed of trust conveying to J. W. Henderson as trustee the 1476 acres in controversy and other lands to secure an indebtedness evidenced by a promissory note for $961.37, of even date with the deed of trust and due to B. A. Shepherd. This trust deed was recorded in Harris County on the day of its date but not filed for record in Montgomery County until August 24, 1870. On April 6, 1858, the deed of trust was foreclosed and B. A. Shepherd became the purchaser of the lands therein described, including the land in controversy. The trustee's deed to Shepherd was recorded in Harris County September 27, 1858, but not in Montgomery

County until August 20, 1870. The mortgage or trust deed in favor of Shepherd was recorded in Harris County before Thompson's deed to Baker was recorded in either county, but the trustee's deed on foreclosure was not recorded in either county until after Baker's deed was recorded in Montgomery County.

Mrs. M. A. Cochran is an heir of B. A. Shepherd, and is shown to be entitled to whatever rights accrued to him by reason of his purchase and the trustee's sale.

Upon this state of facts and certain other facts bearing upon the question of notice to Hammon (which will be stated in another connection) the case was tried to a jury and resulted as already indicated. Inasmuch as the trust deed in favor of B. A. Shepherd and his purchase thereunder was subsequent in point of time to the deed from Thompson to Baker, appellees could not recover on the ground that the deed to Baker was unrecorded, for the reason that the burden of proof was upon appellees to show a purchase for value without notice, and the proof was silent upon the point. That issue was eliminated from the case upon the last appeal. As between appellees and W. B. Turner, the devisee of W. R. Baker, the court assumed in his charge that the deed from Thompson to Baker of date August 12, 1856, and the two conveyances from Thompson to Baker of Date November 10, 1856, and the instrument executed by Baker to Thompson of date November 10, 1856, consituted together a mortgage, instructed the jury that after this great lapse of time the discharge of the debt for which it was given would be presumed, and directed a verdict in favor of appellees as against Turner.

The action of the trial court on this point is first assailed by an objection to the introduction in evidence of the instrument executed by Baker to Thompson. The objections were:

1. That the instrument in question referred to a deed from Thompson to Baker of the same date, whereas Turner claimed under the deed from Thompson to Baker of date August 12, 1856.

2. That the description of the land was too vague to constitute notice.

As to the first objection we held on the former appeal that the point was well taken, and also that the instrument executed by Baker November 10, 1856, and denominated in the briefs a declaration of trust (and for convenience here referred to in the same way) did not contain a sufficiently definite description of the land to identify it as the land conveyed to Baker by the deed of August 12, 1856. We would hold likewise upon this appeal upon a like state of facts. But the former record did not contain the deeds executed by Thompson to Baker on the date of the "declaration of trust."

The deed of August 12, 1856, describes the land as follows: "1476 acres of land (lying and being situated in the State of Texas) granted

to Samuel J. Rickhow, running and lying between the two branches of the San Jacinto River in Montgomery County."

Thompson's deed to Baker of date November 10, 1856, conveys the land in controversy by the following description: "1476 acres of land granted to S. J. Rickhow between the San Jacinto rivers."

In the declaration of trust it is referred to simply as 1476 acres, S. J. Rickhow.

We are of opinion the description in the three instruments taken together clearly refer to the same land and sufficiently identify it, especially in view of other proof adduced showing its location.

The objection that the "declaration of trust" can not be held to refer to and affect the deed of August 12, 1856, is perhaps technically well founded, but it does not reach any vital part of appellees' case. As has been seen, the court charged that the three instruments together constitute a mortgage, and directed a verdict in favor of appellees as against Turner. If as between the parties named a verdict should have been directed on the facts, then it is immaterial that the court was mistaken in the reasons given for his action. Now it is too clear for discussion that the deed from Thompson to Baker of date November 10, 1856, and the "declaration of trust" executed at the same time, constituted a mortgage, for the conveyance was made to secure a debt, and the clause of defeasance was embodied in a written instrument executed at the same time. The land affected in each case was among others the land in question. So it is plain that but for the Thompson-Baker deed of August 12, 1856, the course taken by the trial court would be beyond criticism. Now the deed of August 12, 1856, is without a history in this record. The parties to it are long since dead. We must look to the instruments themselves, their apparent relation to each other in point of time and identity of subject matter to find a reason and an explanation for their separate existence. We find Baker in possession of an absolute deed from Thompson on August 12, 1856. About that time they were engaged in a mercantile partnership and had many transactions with each other. About three months later we find Baker by solemn declarations in written instruments treating the land as the property of Thompson, and accepting a lien upon it to secure named obligations. From the time of the foreclosure of the Shepherd deed of trust up to about the date of the filing of this suit neither Baker nor his representatives have ever set up any claim to the land or paid taxes thereon. The opposing claimants under Thompson have persistently asserted ownership both by payment of taxes and in a suit for partition.

When Hammon sought to purchase from the Baker estate its representatives asserted that the estate did not claim it, and parted with such claim as it might have for an insignificant sum.

From these facts and circumstances and the long lapse of time, it seems to us the conclusion is inevitable either that the deed of August

12, 1856, was a mortgage and had been satisfied at the date of the November transaction, or else the property had been reconveyed by Baker to Thompson in some intervening transaction not disclosed by this record, and doubtless at this late day not susceptible of 'direct proof. As between Baker and his representatives and the appellees there can be no question of notice. Turner, the sole devisee of Baker, fell heir to Baker's rights and no more, and as between Baker and the appellees, under the facts stated, Baker could not have prevailed. The only theory upon which appellant Turner could recover would be that the deed of August 12, 1856, was in fact a conveyance of the title and was unaffected by any subsequent transaction between the parties.

Appellants quote certain expressions of this court on the former appeal addressed to the instrument called the "declaration of trust," and insist that our utterances upon the point are inconsistent with the validity of the judgment in this case. What we then said was addressed to the facts as presented by that record, and both in the matter of description and the proof of the nature of the instruments appellees' case was perfected on the last trial. We said also that if appellees' suit should be treated in this respect as one for specific performance of the covenants in the "declaration of trust" the demand would be clearly barred by limitation. This is still true, but the suit is not of that nature and that issue is eliminated from the case. It may also be true that much that was said in that opinion is inconsistent with the opinion of the Supreme Court in Stafford v. Stafford, 70 Southwestern Reporter, 75, and is to that extent not the law.

We will notice two other objections of appellants in this connection, it not being necessary to discuss the remaining assignments bearing upon this issue.

It will be noted that with reference to the property listed in the "declaration of trust" it is said, "J. A. Thompson has this day conveyed to me his half interest in the following property." Then follows a list of lands, lots, and personalty. Then occurs the expression "Also the following lands," after which is listed several surveys among them the "S. J. Rickhow 1476 acres." Appellants contend that this can be construed at most as a declaration that Thompson only owned and had conveyed a half interest in the land in controversy as well as the other property mentioned. The trial court took a different view, holding that the land mentioned after the word "also" was in a different category, and this is complained of. We approve the view taken by the trial court. Not only is the instrument susceptible of the construction thus given it, but this construction is rendered certain by the fact that Baker on the same day and at the same time accepted from Thompson a conveyance of the property mentioned in which Thompson conveyed the entire property, thus asserting in his transaction with Baker absolute ownership in himself and warranting the title to the entire tract.

Appellants offered a private memorandum made by W. R. Baker and

found among his papers, to the effect that he had wound up the affairs of the firm of Thompson and Baker. That in doing so he had disposed of all the property pledged to him by Thompson, and that the proceeds of such sales were insufficient to liquidate the liabilities of the concern. On objection of appellees the memorandum was excluded and the action of the court in so doing is assigned as error. It is clear that the evidence was inadmissible and the assignment is overruled. The case of Lumber Company v. Gwynn, 67 Southwestern Reporter, 892, conclusive upon the point.

We now come to the assignments of error uged in behalf of Hammon. In this connection we will more fully state the facts affecting his relation to the case.

Hammon purchased and received a conveyance of the land from Turner's attorney in fact on the 8th day of March, 1900, which was after the suits were brought. The record does not disclose the date of service of citation, and it is not otherwise made to appear whether it was served before or after Hammon's purchase. We will not stop to determine upon whom rests the burden of showing the date of service with reference to the purchase, but will dispose of Hammon's appeal as presented in appellants' brief.

Hammon's rights depend entirely upon whether he is shown to have had notice of appellees' claim or was not a purchaser for value. The facts of this phase of the case are as follows: On August 1, 1899, W. B. Turner executed a written power of attorney to E. P. Turner, his father, authorizing him to sell at his discretion any and all of W. B. Turner's lands and to execute deeds therefor. On the 8th of March, 1900, John Hammon and J. L. Hudson were and had been for some time prior thereto associated together as abstractors of land titles of Montgomery County with headquarters at Conroe, the county site of that county. J. C. Hudson was the president and Hammon the secretary of the abstract company. Hammon assisted in compiling the abstract books, and prior to and about the time of the institution of one of these suits in Montgomery County was in and about the clerk's office of said county inspecting the records. Within a week after the filing of the suit in Montgomery County Hammon called for and received from the clerk the papers in the case, and the district clerk testifies without contradiction that this occurred within four or five days and certainly not later than a week after the suit was filed. On March 8, 1900, Hudson, as the agent of Hammon and at his instance, approached E. P. Turner with a proposition to buy the land in controversy. E. P. Turner told him the Baker etsate did not claim the land. Hudson, however, insisted, and after some disagreement as to the price the sale was made for the recited consideration of $300 and other considerations, but the real consideration was only $100, which was paid in cash and the deed was made by E. P. Turner to Hammon. This occurred in the city of Houston, W. B. Turner being then out of the State. Hammon did not

take part personally in the negotiations with E. P. Turner, but was near by and knew it was in progress, and let Hudson have $25 or $30 to make up the requisite amount to make the payment. Hudson paid the balance with his own funds, and being indebted to Hammon, received credit on the amount of his indebtedness to the extent of the funds advanced by him. The suit at that time had been pending in Harris County since February 28th and in Montgomery County since March 3d.

The record does not disclose whether the deed to Hammon was quitclaim or warranty. The land conveyed was worth between five and seven thousand dollars, but if owned by W. B. Turner was covered by a deed of trust executed by him to secure a debt of large amount due by him to J. H. Burnett. This deed of trust specifically described a large amount of property, did not describe or mention the land in question, but contained a "blanket" clause which included all his lands in several named counties, including Montgomery.

J. L. Hudson was not called as a witness. Hammon testified that as to the nine deeds offered in evidence the first time he had knowledge of them was when they were introduced in this case. That on March 8, 1900, he had no knowledge of the contents of the petition in the suit filed in Cochran v. Turner in Montgomery County. He stated he had never read the petition; that he first spoke to Hudson about the Rickhow survey; told Hudson he had examined the books and found out the condition of the title as owned by Baker. That he, Hammon, did not know on March 8th that the land was claimed by the Shepherd estate. That naturally he thought it was claimed by somebody but did not know who the parties were. Did not know the land was claimed by Cochran. Knew it was claimed by somebody, but did not know who it was at that time. It was not on record that some one under Shepherd was claiming the land. Knew there were different instruments on record. Something like a partition deed in the Shepherd estate. There was a partition decree of the B. A. Shepherd estate dividing this property among his heirs. That he did not know what notice the abstract book gave; never examined all of those things. That as far as the examination he gave before the negotiations with Turner is concerned, he noticed the patent to Henderson; the deed from Henderson to Thompson; the deed from Thompson to Baker, and checked out the index several times. Did not examine the deed of trust or the trustee's deed to Shepherd, but saw a note of them on the abstract book. If witness saw said papers everything was subsequent to the deed of Thompson to Baker. What he saw of record was subsequent in date to the deed of Thompson to Baker. Page 439 of the witness' Montgomery County abstract book devoted to the Rickhow survey in controversy showed as follows:

"Grant from
     "State to Henderson.
     "Thompson to Baker.   Deed.

"Thompson to Shepherd. Deed of trust.
"Thompson to Shepherd. Deed.
"B. A. Shepherd to Laura Root. Decree partition.
"B. A. Shepherd to Mary Cochran. Decree partition.
"J. W. Henderson to J. A. Thompson. Deed."

This witness made no reference to the testimony of the clerk of the District Court of Montgomery County as to his calling for the papers in the case a few days after it was filed, and did not say whether or not he called for the papers in the Cochran case before or after he bought. Does not give the date when he received them, but contents himself with the technical denial that he knew the contents of the original petition when he purchased on March 8, 1900. He admits knowledge that the land was claimed by the B. A. Shepherd estate and that it was partitioned in the division of that estate, but seeks to avoid the force of these facts by the statement that the date and record of the deed of trust and sale under which Shepherd claimed was subsequent to the date of the Baker deed of August 12, 1856.

It was shown that the land was vacant but that Shepherd and his heirs had claimed the land and paid taxes on it for a period of about twenty years, and that neither Baker nor his estate had ever claimed it or paid taxes on it, and the record warrants the conclusion that W. B. Turner never asserted any claim to it until his attorney in fact, when advised through Hudson of the state of the title, parted with such claim as the estate had. It is thus made perfectly clear that Hammon was not only put upon inquiry as to the Cochran claim, but actually knew the suit had been filed. In addition to this, though near at hand he did not deal personally with E. P. Turner, but made the purchase through his partner and agent, J. L. Hudson. This agent was actually advised that the Baker estate or W. B. Turner did not even claim to own the land, yet without further inquiry he insisted on the purchase, conferring with his principal as to the price, and finally secured a deed to 1476 acres of land worth from five to seven thousand dollars for a consideration of $100.

We think the court might well have assumed as a proven fact that Hammon was chargeable with notice of the Cochran claim and suits, and have directed a verdict against Hammon as he did against Turner.

In this view of the case we decline to further lengthen this already long opinion by a detailed discussion of the remaining assignments. The errors complained of with reference to Hammon become immaterial. The evidence is sufficient to sustain a finding that a portion of the 1476 acres lies in Harris County, and this perhaps accounts for the fact that nearly all the deeds and other instruments affecting it were placed of record in that county. But this finding has not influenced us in our conclusion. The assignments of error complaining of the action of the trial court in his rulings upon the admission or exclusion of evidence affecting the location of the land as in the one or the

other county are not only immaterial in our view of the case, but either present no error, or else the points are not preserved and presented in such a way as to require our notice.

We have not taken the pains on this appeal to set out the date of the record of the various instruments adduced by the parties, because in our opinion the question of constructive notice became immaterial. But if findings upon those points should be regarded as necessary to the rights of appellants or appellees, we here refer to the main opinion on the former appeal, which contains an accurate statement of such matters as are here omitted, and the record upon those points is identical upon this and the former appeal.

Upon the issue as between appellees and W. B. Turner or the Baker estate, and the propriety of the action of the court in assuming as a fact that no title was shown in the Baker estate, we have had grave doubts, and in the hope that we would receive some aid in a general way from the answer of the Supreme Court in Stafford's case, supra, we have postponed until now the determination of this appeal.

But in our present view as to the force of the undisputed facts we are clear that the judgment of the trial court should be affirmed, and it is so ordered.

*Affirmed.*

Writ of error refused.